[No. B201171. Second Dist., Div. Three. Aug. 13, 2009.]

STEVEN MUELLER, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

## COUNSEL

Haney, Buchanan & Patterson, Steven H. Haney, Michelle S. Tamkin; and George G. Romain for Plaintiff and Appellant.

Manning & Marder, Kass, Ellrod, Ramirez, Mildred K. O'Linn and Julie Fleming for Defendant and Respondent.

## Opinion

**CROSKEY, J.**—Plaintiff Steven Mueller, a firefighter with the County of Los Angeles Fire Department (the department), appeals from a judgment entered in favor of the County of Los Angeles (the county) on plaintiff's complaint. The complaint charges the county and its department personnel with conducting a negligent investigation into his complaints of harassment and retaliation, and with breach of the firefighters' union contract with the county, whistleblower retaliation against plaintiff, and intentional infliction of emotional distress.[1]

The county removed the case to the federal district court, where the cause of action on plaintiff's federal claim (violation of plaintiff's federal rights under 42 U.S.C. § 1983) was adjudicated against him in a summary judgment and the case was then remanded back to state court for adjudication of plaintiff's remaining causes of action. Those claims were decided in the county's favor in the trial court's order granting the county's motion for summary judgment. It is from the judgment thereafter entered from which plaintiff now appeals. We find no cause to reverse and therefore the judgment will be affirmed.

### BACKGROUND OF THE CASE

1. *Plaintiff's Complaint*

   a. *Allegations in the Complaint*

Plaintiff's complaint, which was filed in April 2005, makes the following allegations:

Plaintiff began his employment with the department in August 1991 and thereafter established a reputation as an excellent and dedicated firefighter. In August 2002, plaintiff publicly stated his disapproval that two firefighters in the department, Captains Javier Murrieta and Michael Ponder, had been transferred, and thereafter their temporary replacements, Captains Tom Ray and James Lile, retaliated against plaintiff for his having expressed his opinion. Ray and Lile engaged in a continuing and systematic pattern of harassing plaintiff by, among other things, writing memoranda to him wherein

---

[1] Plaintiff also named his local chapter of the International Association of Fire Fighters, AFL-CIO in some of his causes of action but then dismissed the union from the case.

they reprimanded him for inconsequential matters that plaintiff's colleagues would not be documented for, including alleged equipment loss, personnel rotations, and use of inappropriate language. Captain Ray stated to the crew at fire station No. 118, where plaintiff was stationed, that it was his and Captain Lile's intent to drive plaintiff out of that fire station.[2] Plaintiff filed a grievance with Battalion Chief Peter Sylchak asking that this incident be investigated but no action was taken.

Plaintiff was subjected to derogatory comments and nonverbal gesturing by Ray, Lile and other firefighters. As hostile treatment of plaintiff by supervisory personnel and fellow firefighters escalated, the hostility was ratified by the department by its acts and omissions in failing to timely and effectively respond to plaintiff's grievances.

On October 1, 2002, Battalion Chief Sylchak and Assistant Chief John Nieto presented plaintiff with three options. Plaintiff could (1) remain at station No. 118 until the situation with Captains Ray and Lile was resolved by their planned move to different assignments, (2) be departmentally transferred to another fire station, or (3) be detailed to another station until the situation at station No. 118 was resolved. Plaintiff chose the latter option upon the assurance by Assistant Chief Nieto that being detailed to fire station No. 43 would last only a few weeks until Captains Ray and Lile were transferred out of station No. 118. However, on October 31, 2002, Battalion Chief Sylchak informed plaintiff that his placement at station No. 43 would be considered semipermanent and plaintiff would maintain a permanent position at station No. 118. In reality though, the department and its agents had no intention of returning plaintiff to station No. 118.

On November 22, 2002, plaintiff experienced further retaliation when he was sent on a temporary departmental transfer to station No. 62 to replace a firefighter who was on long-term disability. At the same time, plaintiff had his position at station No. 118 put out to bid and given away. In January 2003, when the position of the firefighter on long-term disability became vacant, plaintiff was not given that position. Instead, on January 31, 2003, he was retaliated against again by being sent on a departmental transfer to station No. 82. After seven months of duty at station No. 82, plaintiff voluntarily transferred to station No. 64, but in May 2004, Battalion Chief Sylchak was transferred to plaintiff's battalion station and shift, which constituted continued harassment of plaintiff.

To exhaust his administrative remedies, plaintiff filed four grievances about his hostile work environment, which included the statement by Captain Ray that he would run plaintiff out of station No. 118, and the series of retaliatory

---

[2] Plaintiff began working at station No. 118 in October 2000.

transfers of plaintiff from station to station, because such actions are in violation of the memorandum of understanding entered into by plaintiff's local union and the county. Although resolution of grievances was required to be completed in 10 days, the county took as long as a year to resolve them.

Arbitration was held on the issue of the transfers and the arbitrator, by decision dated June 17, 2004, determined the memorandum of understanding was violated when plaintiff was sent to station No. 62.[3] The arbitrator ordered that plaintiff be made whole for any loss of credits for promotional purposes that he suffered. However, that remedy does not make plaintiff whole and for that reason plaintiff filed suit seeking compensatory and punitive damages. Plaintiff filed a government claim with the county that was denied.

### b. *Causes of Action*

Plaintiff's first cause of action against the county is the federal claim that has already been resolved. His second cause of action is for damages resulting from negligent investigation of the actions taken against plaintiff by the captains and other firefighters, including the misleading transfers imposed on plaintiff.[4]

---

[3] Regarding the transfer of plaintiff out of station No. 118, the arbitrator made factual findings based on the testimony of plaintiff and Deputy Chief Daryl Osby. The arbitrator found the department had the right to exercise its administrative prerogative to give plaintiff an involuntary transfer out of station No. 118 if doing so served the department's best interests, and further found there were negative conditions at station No. 118 that reasonably could be expected to improve by such a transfer. The arbitrator found there were conflicts at station No. 118 that involved plaintiff and that led to a stressful work environment and lack of teamwork there. The arbitrator concluded there was no abuse of discretion in transferring plaintiff out of station No. 118.

[4] Part of the damages claimed by plaintiff in this suit concerns the department's transfer of him out of fire station No. 43, a hazardous materials station. He states assignment to station No. 43 included an earnings bonus and an increased opportunity to work overtime, and by being transferred out, he lost those benefits. However, at his arbitration, plaintiff testified that although the battalion chief assured him that the transfer *to* station No. 43 was only to last a few weeks, he later heard rumors that the assignment to station No. 43 would last longer than anticipated and he filed a grievance. Filing a grievance about his stay at station No. 43 being *extended* appears inconsistent with his later claim of damages from being transferred out of station No. 43.

Moreover, in addressing the trial court's concern (at the summary judgment hearing) that plaintiff had not timely filed a claim with the county under the Government Claims Act (Gov. Code, § 900 et seq.), plaintiff's attorney asserted in supplemental briefing on that issue that plaintiff had not actually suffered any appreciable damage within the six months of the date he did file his claim with the county because his damages actually occurred when he learned in April 2006, that he would not be promoted to the rank of captain even though he had passed the captain's exam. This representation to the trial court also appears to be inconsistent with plaintiff's claim that being transferred out of station No. 43 caused him to lose the earnings bonus and overtime work.

The third cause of action alleges breaches of the collective bargaining agreement between the local union to which plaintiff belongs and the county. The trial court ruled this third cause of action is not viable, and plaintiff does not challenge that ruling in this appeal.

Plaintiff's fourth cause of action is for declaratory relief (a declaration that he has been subjected to retaliatory treatment) and damages. It alleges the county violated the county and state whistleblower protection laws, first by retaliating against him for voicing his opinion about the transfer of Captains Murrieta and Ponder, and then by retaliating against him for filing formal grievances. The fifth cause of action is for intentional infliction of emotional distress.

### 2. The County's Motion for Summary Judgment

The county filed its motion for summary judgment on November 30, 2006. The county asserted a jurisdictional challenge to recovery on the complaint, namely that plaintiff failed to timely comply with the requirement in the Government Claims Act (Gov. Code, § 900 et seq.) that he file a claim with the county. Regarding the individual causes of action, the county asserted plaintiff's second cause of action for damages for negligent investigation of his claims has no legal basis because plaintiff did not allege a specific enactment under which the county would be liable for damages, and if there were such a statute, the county asserted the evidence shows plaintiff's claims of harassing discipline and transfers were actually based on his own performance and behavior issues. Regarding the fourth cause of action, which claims violation of the county and state whistleblower protection laws, the county asserted plaintiff had no evidence which would bring him within the parameters of those protection laws. Lastly, the county asserted the fifth cause of action for intentional infliction of emotional distress is barred by workers' compensation law.

Plaintiff's opposition papers asserted plaintiff did timely file his Government Claims Act claim with the county. Regarding his cause of action for negligent investigation of his claims, he argued that the county's own rules and regulations are the enactments that support it, and he disputed the factual accuracy of evidence presented by the county. Additionally, he asserted the facts of this case bring his claim of retaliation within the county and state whistleblower provisions, and he asserted the harassment inflicted on him takes his case outside of workers' compensation law.

With his opposition papers, plaintiff filed a request that hearing on the motion be continued to allow him to obtain additional evidence to support his opposition. Some days later he filed an ex parte application for an order

shortening time to file a motion to compel discovery of that same evidence. These two matters were not specifically addressed by the trial court at the summary judgment hearings and that is one of the issues raised by plaintiff in this appeal.

Hearings on the summary judgment motion were held on February 16 and March 5, 2007. As discussed below, except for the issue of compliance with the Government Claims Act, the trial court determined that the legal bases asserted by the county in support of its summary judgment motion were correct.

The motion was granted, judgment was signed and filed on May 4, 2007, and plaintiff filed a timely notice of appeal. Prior to filing the notice of appeal, plaintiff filed a motion for new trial which was denied. The appellate record, however, does not contain a notice of appeal from the order denying that motion.

## *CONTENTIONS ON APPEAL*[5]

In this appeal, plaintiff challenges the trial court's rulings on three of his causes of action.[6] He also contends the court erred when it denied his request

[5] In his opening and reply briefs, some of plaintiff's citations to the record are not accurate page numbers and thus do not support the asserted facts for which they are cited. Some citations are to evidence that does not actually support the asserted facts for which the evidence was cited. Other citations are to initial pages of a document (like the first page of a deposition transcript) rather than to the exact page(s) of the document, and thus do not support the asserted facts. Still other assertions of fact have no citation whatsoever. Moreover, even when plaintiff does cite to the record, it is sometimes to his own separate statement of material facts, and although the separate statement does contain references to evidence, the references are not to the page numbers of the appellate record. Finally, some citations are very broad, such as plaintiff's reference to "CT vol. 3, p. 609—vol. 5, p. 1008." Those several hundred pages contain the materials submitted by plaintiff in opposition to the motion for summary judgment (including among other things, declarations, deposition transcripts, responses to discovery, performance evaluations, the department's manual of operations and equal employment opportunity policy, seven of plaintiff's performance evaluations, and the memorandum of understanding between the department and plaintiff's union). Plaintiff describes these pages by stating: "[A]mongst [plaintiff's] evidence submitted was testimony by a large number of fellow firefighters on the events in question, and his annual performance reviews," as if to invite this court to read pages 609 to 1008 to ferret out such asserted evidence.

The claimed existence of facts that are not supported by citations to pages in the appellate record, or not appropriately supported by citations, cannot be considered by this court. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 [69 Cal.Rptr.3d 365]; *In re S.C.* (2006) 138 Cal.App.4th 396, 406 [41 Cal.Rptr.3d 453]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [126 Cal.Rptr.2d 178]; *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401].)

[6] As noted above, plaintiff's first cause of action is moot in this action because it has already been decided by the federal district court, and plaintiff does not dispute the trial court's ruling

to continue the summary judgment hearing to obtain further discovery, denied his ex parte application regarding compelling discovery, and denied his motion for new trial. Additionally, he asserts the judgment contains erroneous statements regarding the trial court's consideration of the evidence.

Plaintiff also complains the trial court did not rule on the evidentiary objections he made to the county's evidence. However, he does not provide any citation to the record showing that he ever asked for a ruling. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

## DISCUSSION

### 1. *The Second Cause of Action*

Plaintiff's second cause of action alleges he sustained damages resulting from negligent and tardy investigation, by the department, of the negative actions taken against him by Captains Lile and Ray and other firefighters, which caused him to be subjected to repeated transfers and be misled as to the nature of the transfers. In explaining why this cause of action fails, the trial court reasoned that plaintiff did not demonstrate that the department's written policy on behavior norms,[7] which the policy states applies to all of the department's employees, creates legally enforceable duties on the department that compel a careful investigation when a complaint is lodged that an employee has violated the behavior norms of the department.

Referencing Government Code section 815.6,[8] the court reasoned that if section 815.6 applies in plaintiff's negligent investigation cause of action,

---

on his third cause of action. That leaves the second, fourth and fifth causes of action at issue in this appeal. At the March 5, 2007 hearing on the summary judgment motion, the trial court presented the parties with a lengthy analysis of causes of action two through five to indicate why the court found they have no legal basis.

[7] Included in the behavior norms imposed by the department's policy are such things as exercise good judgment, protect department property, refrain from using coarse, profane or insulting language, refrain from subjecting anyone to harassing behavior, refrain from smoking in department facilities, refrain from falsifying reports and records, and operate department vehicles in a safe manner. The department's policy states that supervisors are to report any violation of the standards of behavior to their battalion chief or section head, and further states that violation of any of the standards set out in the behavior policy will constitute grounds for formal disciplinary action, and the type of disciplinary action depends on the seriousness of the offense and prior disciplinary history of the employee.

[8] Government Code section 815.6 states: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

then persons could sue the county and department for negligent investigation if they made a complaint that someone smokes, curses, or uses bad judgment at a fire station and then were not satisfied with the results of the department's investigation. The court stated that the department's behavior policy does not create *mandatory* duties on the fire department but rather gives the department discretion in enforcing its behavior policy and allows the department to make judgment calls. It stated that "a broad and vague list of standards like this" would be hard to enforce without discretion unless there were a zero tolerance policy for every kind of misconduct. The court stated that simply because the authority granted by an enactment can be coercive does not make exercising the power mandatory, and because the parties' memorandum of understanding cannot be enforced in a cause of action of this type does not mean that there is no remedy since "unions and management have a lot of powers against each other."

■ To support its analysis of the department's policy on behavior norms, the court cited *Sutherland v. City of Fort Bragg* (2000) 86 Cal.App.4th 13 [102 Cal.Rptr.2d 736], where the reviewing court, relying on California Supreme Court decisions concerning Government Code section 815.6, observed that to come within section 815.6 on a claim of damages liability, the enactment at issue, in its directions to the public entity, must require (not merely authorize or permit) that a particular action be taken or not taken. The enactment must be obligatory, not discretionary or permissive, and, even if the public entity or officer has been under an obligation to perform a function, if the function involves the exercise of discretion, section 815.6 is not applicable. (*Sutherland*, at pp. 19–20.) Thus, "even where language in the predicate enactment appears mandatory [such as by use of words like 'shall'], if significant discretion is required to carry out any duty imposed, that duty is not mandatory within the meaning of section 815.6 and thus a breach of the duty will not support tort liability." (*Id.* at p. 20, italics omitted.) The *Sutherland* court also observed that exercise of discretion can also include declining any enforcement measures at all. (*Id.* at p. 24.) One of the Supreme Court decisions relied on by the *Sutherland* court is *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499 [93 Cal.Rptr.2d 327, 993 P.2d 983], where the Supreme Court stated: "Whether an enactment creates a mandatory duty is a question of law: 'Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' (*Creason* [*v. Department of Health Services* (1998)] 18 Cal.4th [623,] 631 [76 Cal.Rptr.2d 489, 957 P.2d 1323].)"

■ We find the trial court's analysis of this cause of action persuasive, and thus the other grounds presented by the county for sustaining the trial court's ruling need not be addressed here. Plaintiff's assertion that the department had an obligation to conduct investigations into his grievances

does not put him in the legal position he claims in this appeal. This case involves what the *Creason* court described as an "obligation to perform a discretionary function." (*Creason v. Department of Health Services, supra,* 18 Cal.4th at p. 631.) Clearly the department must have discretion with respect to its investigations of alleged violations of its written policy on behavior norms.

Plaintiff's reliance on the deposition testimony of a person he describes as the county's "person most qualified" is misplaced. The testimony was given in another case involving the department, and the deponent was questioned about a poster that states it (the poster) is required to be posted by employers pursuant to the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). The poster gives information about harassment in the workplace. The deponent testified that the poster makes it a requirement that the department take steps to prohibit harassment at the workplace, investigate claims of workplace harassment, and prevent retaliation against persons who report harassment. Neither that testimony nor the poster is relevant in the instant case. Here, plaintiff has invoked the department's *internal policy.* He did not allege a cause of action based on the California Fair Employment and Housing Act, to which the poster and testimony relate.

## 2. *The Fourth Cause of Action*

Seeking declaratory relief (a declaration that he has been subjected to retaliatory treatment) and damages, plaintiff's fourth cause of action alleges the department violated whistleblower protection laws enacted by the county and the state by retaliating against him for voicing his opinion about the transfer of Captains Murrieta and Ponder out of fire station No. 118, and then retaliating against him for filing formal grievances about his treatment at that fire station and about the several transfers moving him from station to station. In addressing this cause of action, the trial court opined that one's feeling that he is being harassed at the workplace and complaining about it to superiors is not what is generally understood to be a whistleblower situation. Rather, said the court, "[a] whistleblower classically is someone who reports misconduct of a corrupt or illegal character to try to get the corruption fixed."

### a. *Alleged Violation of the County Code's Whistleblower Provision*

Section 5.02.060, subsection A, of the Los Angeles County Code states: "No officer or employee of the county of Los Angeles shall use or threaten to use any official authority or influence to restrain or prevent any other person, acting in good faith and upon reasonable belief, from reporting or otherwise bringing to the attention of the county auditor-controller or other appropriate

agency, office or department of the county of Los Angeles any information which, if true, would constitute: a work-related violation by a county officer or employee of any law or regulation; gross waste of county funds; gross abuse of authority; a specific and substantial danger to public health or safety due to an act or omission of a county official or employee; use of a county office or position or of county resources for personal gain; or a conflict of interest of a county officer or employee."[9]

Subsection B of section 5.02.060 of the Los Angeles County Code states: "No officer or employee of the county of Los Angeles shall use or threaten to use any official authority or influence to effect any action as a reprisal against a county officer or employee who reports or otherwise brings to the attention of the auditor-controller or other appropriate agency, office or department of the county of Los Angeles any information regarding subjects described in subsection A of this section."

Subsection C of section 5.02.060 of the Los Angeles County Code provides that "[a]ny person who believes that he or she has been subjected to any action prohibited in subsections A or B of this section may file a complaint with the director of personnel. The director shall investigate the complaint and thereafter prepare a report thereon which shall be forwarded to the board of supervisors." Subsection D of section 5.02.060 provides: "Any officer or employee of the county of Los Angeles who knowingly engages in conduct prohibited by this section shall be disciplined, including but not limited to discharge, in accordance with the personnel rules and regulations of the county of Los Angeles."

■ Based on the code's directives that (1) persons claiming they are the victims of whistleblower retaliation should file a complaint with the director of personnel who will then investigate and file a report with the county board of supervisors, and (2) county officers or employees who retaliate will be disciplined in accordance with the county's personnel rules and regulations, the trial court ruled that the code provides these measures of relief and therefore there is no private right of action against the county. Plaintiff properly questions the trial court's analysis. He observes that in *Haggis v. City of Los Angeles, supra,* 22 Cal.4th at pages 499–500, the court rejected the same argument, saying "[w]e cannot agree with the City and amici curiae that liability under [Government Code] section 815.6 requires that the enactment establishing a mandatory duty *itself* manifest an intent to create a private right of action, for their position is directly contrary to the language and function of section 815.6. When an enactment establishes a mandatory governmental duty and is designed to protect against the particular kind of injury the

---

[9] Plaintiff does not state which of the reportable activities set out in subsection A of section 5.02.060 he believes applies to his claim of whistleblower retaliation.

plaintiff suffered, section 815.6 provides that the public entity 'is liable' for an injury proximately caused by its negligent failure to discharge the duty. *It is section 815.6, not the predicate enactment, that creates the private right of action.*"

Nevertheless, plaintiff is precluded from pursuing a cause of action under Los Angeles County Code section 5.02.060 by the fact that Government Code section 815.6 requires that the prospective defendant public entity, here the county, be under a *mandatory* duty to act in some certain way, rather than under an obligation to perform a discretionary function, and here, the provisions in section 5.02.060 come under the latter alternative. Section 5.02.060 requires that after a plaintiff has filed a complaint with the county's director of personnel to assert he was the victim of whistleblower retaliation, the director of personnel is required to investigate the complaint and then make a report and forward it to the board of supervisors. Implicitly, the board of supervisors would then make some determination regarding the report, although section 5.02.060 does not set out the particulars of that determination. How the investigation is carried out, what the report to the board of supervisors includes, and what action the board takes, are all discretionary functions. Moreover, in conducting an investigation, the director of personnel must recognize, as we discussed above, that enforcement of the department's behavior norms is itself a discretionary function.

### b. *Alleged Violation of Labor Code Section 1102.5*

Nor does plaintiff's retaliation claim fare better under Labor Code section 1102.5. That section states in relevant part: "(a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

"(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation. [¶] . . . [¶]

"(e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)."

Section 1102.5 of the Labor Code requires that to come within its provisions, the activity disclosed by an employee must violate a federal or

state law, rule or regulation. (*Carter v. Escondido Union High School Dist.* (2007) 148 Cal.App.4th 922, 933 [56 Cal.Rptr.3d 262].) Thus, in addressing this cause of action in the instant case, the trial court stated that plaintiff's claim is not viable under Labor Code section 1102.5. In his opening brief on appeal, plaintiff objects to the court's analysis, saying that the Labor Code only requires that the employee *have reasonable cause to believe* that the information he discloses to a government or law enforcement agency discloses a violation of such statute, rule or regulation, and in the instant case it is an issue of material fact whether plaintiff reasonably believed that the reports and grievances he made to the county pertained to such violations of law. However, as the county points out in its brief, plaintiff's analysis misses the point of the trial court's statement, which was that this case is not about perceived violations of federal or state statutes, rules or regulations but rather about perceived violations of the department's own policies, which are local policies.

· To meet that analysis, plaintiff asserts in his reply brief that he did reasonably believe and report that the county violated the law by transferring Captains Ponder and Murrieta out of station No. 118 in retaliation for their having reported department violations of Division of Occupational Safety and Health (Cal/OSHA) safety regulations. The problem with this representation is that it is not supported by any factual presentation in plaintiff's briefs. Although plaintiff's opening brief states that Captains Murrieta and Ponder were transferred out of station No. 118 after they reported department violations of Cal/OSHA safety regulations, the brief does not cite to the record to support that assertion. Moreover, in another part of his opening brief, plaintiff presented a different description of why Ponder and Murrieta were transferred out of station No. 118, and it is also not supported by citation to the appellate record. Further, plaintiff testified at his deposition that his whistleblower cause of action is not based on his actions regarding Captains Ponder and Murrieta; rather, he stated that the cause of action is about the grievances he filed and how after he filed those grievances he "was retaliated against by either being moved or memo'd."

■ Last, but certainly not least, the activities of the department personnel of which plaintiff complains in his suit do not rise to the level of whistleblower retaliation. Matters such as transferring employees, writing up employees, and counseling employees are personnel matters. "To exalt these exclusively internal personnel disclosures with whistleblower status would create all sorts of mischief. Most damagingly, it would thrust the judiciary into micromanaging employment practices and create a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications of the job site. [Citation.]" (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1385 [37 Cal.Rptr.3d 113].)

### 3. The Fifth Cause of Action

The fifth cause of action seeks damages for intentional infliction of emotional distress. It alleges that the conduct of the department and its employees to which plaintiff objects was intentional, malicious, and done for the purpose of causing him to suffer humiliation, mental anguish, and physical and emotional distress, and the conduct was ratified by the department with the intent that plaintiff's emotional and physical distress would increase. As a result of these acts, plaintiff suffered emotional and physical distress which manifests itself in physical symptoms of general stress-induced changes in appearance and temperament and loss of consortium. At the summary judgment hearing, the court observed that California Supreme Court cases hold there is no independent recovery for intentional infliction of emotional distress in the employment arena because that injury comes under the exclusive remedy of workers' compensation law.

■ Injuries sustained and arising out of the course of employment are generally subject to that exclusive remedy. The exclusive remedy applies even when the damages result from intentional conduct by the employer that is a normal part of employment relationships, and even though such conduct may be described as egregious, harassment, manifestly unfair, or intended to cause emotional distress. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 15, 25 [276 Cal.Rptr. 303, 801 P.2d 1054]; *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 159–160 [233 Cal.Rptr. 308, 729 P.2d 743].)

In *Cole*, the plaintiff was a firefighter employed by the defendant. The plaintiff's complaint alleged various forms of serious harassment suffered by the plaintiff at the hands of an assistant chief, causing the plaintiff to suffer such extreme stress and pressure that his physical condition deteriorated severely over the course of a year, and what began as hypertension deteriorated to his having a totally disabling cerebral vascular accident leaving him unable to move, and unable to communicate except by blinking. The *Cole* court held that the alleged actions of the assistant chief, though asserted to have been undertaken with the purpose of causing the plaintiff emotional distress, nevertheless came within the exclusive provisions of workers' compensation law. The court stated that actions that are a normal part of employment relationships, such as demotions and promotions, disciplinary hearings, criticism of work practices, friction in the workplace, and harassment by supervisors do not cause an employee's claims to fall outside of workers' compensation law even when the actions are taken with the purpose of causing emotional distress. (*Cole v. Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at pp. 159–161.) Thus, the assistant chief's conduct was not something that had a questionable relationship to the employment such as it would not be considered a risk of employment. (*Cole* at p. 161; *Shoemaker v. Myers, supra,* 52 Cal.3d at p. 16.)

In contrast is *Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420 [235 Cal.Rptr. 68], where the plaintiff alleged he suffered sexual harassment at work from a coworker, including offensive touching, gestures, remarks and language, and although he often complained to a supervisor, no remedial action was taken on his behalf. He sued the employer, supervisor and the alleged harasser and included a cause of action for intentional infliction of emotional distress. The *Hart* court held that the harassing actions of the coworker had a questionable relationship to the plaintiff's employment and could not be considered a risk of employment. (*Id.* at p. 1430.)

The analyses in *Cole* and *Shoemaker* control here and preclude plaintiff's cause of action for intentional infliction of emotional distress. The incidents in plaintiff's employment with the county of which he complains in this case are specifically what the *Cole* court described as a normal part of employment relationships.

    4.   *Plaintiff's Request for a Continuance for Additional Discovery and Ex Parte Application for Order Shortening Time to File and Serve a Discovery Motion*

The county filed its moving papers for the summary judgment motion on November 30, 2006. On February 1, 2007, when plaintiff filed his opposition to the motion for summary judgment, he also filed a request for a continuance of the hearing on the motion, citing Code of Civil Procedure section 437c, subdivision (h) as authority for the request. The request was based on the expressed need to obtain necessary documents that the county failed to produce when plaintiff took the deposition of the county's "person most knowledgeable" on October 3, 2006. In particular were documents identified to the county, in the notice of taking deposition, as follows: "All Reports of Performance Evaluation during January 1, 2002 to September 30, 2002, or covering any time therein, for all candidates who were promoted to Captain from Band Three following the Captain's exam of December 2004." Plaintiff's attorney indicated in her supporting declaration that the subject documents were relevant and crucial to plaintiff's claim that even though he was qualified for the position of captain, he was wrongfully denied a promotion to that rank when others with the same or fewer qualifications than plaintiff has were promoted to captain.[10] The county opposed the requested continuance.

Additionally, on the day of the initial hearing on the summary judgment motion, February 16, 2007, plaintiff filed an ex parte application for an order

---

[10] Why the county did not produce the documents between the day the deposition was taken and the day plaintiff filed his request for a continuance of the summary judgment hearing is a point of dispute between the parties.

shortening time to file and serve a motion for an order compelling production of the subject documents. In describing the importance of the documents, the application states they are directly related to plaintiff's retaliation claim and they would "reflect the fact that but for the County's retaliation against Plaintiff for filing grievances and a legal claim," he should have been promoted to the rank of captain based on his test scores and level of experience.

At the February 16 hearing, the court did not address plaintiff's Code of Civil Procedure section 437c, subdivision (h) request for a continuance to obtain the subject documents, nor plaintiff's ex parte application for an order shortening time; nor did the court address the merits of the summary judgment motion. Rather, the court addressed a jurisdictional issue with which it was concerned, to wit, that plaintiff had not timely filed a claim with the county under the Government Claims Act. The court opined that resolution of that issue would indicate whether the case could go forward. The court permitted the parties to file briefing on the jurisdiction issue and continued the hearing to March 5, 2007. When the hearing on the summary judgment motion resumed on March 5, the court was satisfied that the claim was timely presented to the county, but nevertheless found that summary judgment should be granted on the above discussed legal grounds respecting each individual cause of action. Once again, the court did not address plaintiff's request for a continuance and his ex parte application.

On appeal, plaintiff contends he was prejudiced when the trial court did not take those matters up. He contends the subject documents were ultimately obtained by his attorney in another case in which his attorney represented another firefighter in the same captain's exam group as the group plaintiff was in and they show that over one-half of the candidates promoted had lower scores than plaintiff did. Plaintiff asserts this is evidence of the county's retaliation against him.

We find no prejudice. As discussed above, plaintiff's cause of action for retaliation has no legal basis. Therefore, his motion and ex parte application were moot and there was no need for the trial court to rule on them.

5. *Plaintiff's Motion for New Trial*

Plaintiff challenges the denial of his motion for new trial. We decline to consider the challenge for two alternative reasons. First, he did not file an appeal from the order denying the motion.

Second, in his opening brief, he states that in his new trial motion he notified the trial court of (1) "certain legal issues that were wrongly decided"

and (2) "newly-discovered evidence, including the County's admission that it did have duties to prevent the harm that occurred to [plaintiff]." Therefore, plaintiff concludes, the court abused its discretion when it denied his new trial motion. Plaintiff does not cite to specific pages in the appellate record wherein this new evidence is set out and discussed, nor where the specific legal issues to which he takes exception are addressed. Rather, he cites to the beginning page of his notice of intent to move for a new trial and the beginning page of his points and authorities, all totaling 50 pages. His opening brief presentation on the issue is six lines long. His reply brief presentation is longer but, again, contains no citations to the record to support the points he argues. Thus, even if he had filed an appeal from the order denying the new trial motion, we would find that he has waived the argument.

### 6. Accuracy of the Judgment

Plaintiff questions the accuracy of the judgment. He asserts it contains misstatements to the effect that at the summary judgment hearing the trial court made certain findings regarding evidence. He asserts that at the hearing the trial court did not discuss any of the evidence or make evidentiary findings. This assertion tracks a similar assertion he makes in this appeal— that at the hearing the trial court did not address "the evidence or factual disputes between the parties, despite the high number of them presented in the moving and opposing papers."

We perceive no inaccuracies in the judgment. At the summary judgment hearing, after the court presented its tentative analysis of plaintiff's causes of action and listened to oral argument, the trial court observed that granting a motion for summary judgment "is something that is only done properly when there is a watertight legal barrier against recovery [a]nd I believe there is on all counts in this case." From this statement, and from a reading of the court's tentative analysis contained in the reporter's transcript, we find that, contrary to plaintiff's contention, the trial court did consider the evidence presented by the parties when it read their papers and drew up its tentative analysis, which it later adopted as its ruling. The court could only properly find a "watertight legal barrier" to recovery if it applied relevant law to that evidence.

At the beginning of the hearing, the court described the tentative analysis it was about to give to the parties as "a fairly elaborate analysis," and that was an accurate description. In its judgment, with respect to each cause of action, the court referenced that same analysis by citing to specific pages in the reporter's transcript of the summary judgment hearing. That is a fair way of explaining, in the judgment, the basis of the trial court's decision to grant summary judgment.

## *DISPOSITION*

The summary judgment is affirmed. Costs on appeal to the County of Los Angeles.

Klein, P. J., and Kitching, J., concurred.