Filed 11/19/14  Greg G. v. City of Lops Angeles CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREG G. et al., | B248904 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC478101) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David L. Minning, Judge.  Reversed with directions.

McNicholas & McNicholas, Matthew S. McNicholas and Alyssa Schabloski; Esner, Chang & Boyer and Stuart B. Esner for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney and Paul L. Winnemore for City of Los Angeles.

Plaintiffs and appellants Greg G., Mike B., Juan M., and Jesse S. appeal from a judgment entered in favor of defendants and respondents City of Los Angeles (City) and the Los Angeles Police Department (LAPD), after the trial court sustained without leave to amend defendants' demurrer to plaintiffs' first amended complaint. On appeal, plaintiffs contend that their complaint adequately states a cause of action for whistleblower retaliation pursuant to Labor Code section 1102.5, subdivision (b). We disagree. However, plaintiffs contend that they can amend their complaint to render it adequate. We agree that if plaintiffs can amend their complaint in good faith to resolve our concerns regarding specific reports of wrongdoing, the complaint would be sufficient to survive demurrer. We therefore reverse with directions that the demurrer be sustained with leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Underlying Facts*[1]

Plaintiffs are four LAPD officers who were assigned to the Internal Surveillance Unit (ISU) in the Special Operations Division of the LAPD. The ISU conducts surveillance on other LAPD officers suspected of criminal activity. As such, the identity of officers assigned to ISU is kept confidential; their names do not appear on official LAPD rosters and they are not permitted to enter LAPD buildings.

In April 2011, Captain Paul Hernandez took charge of the Special Operations Division. Captain Hernandez was disappointed with the work of ISU, and indicated that

---

[1]     Because the case is on appeal from a judgment following an order sustaining a demurrer without leave to amend, we consider the facts as pleaded in the operative complaint, and matters which are judicially noticeable.

he would make some changes. On June 6, 2011, Captain Hernandez informed the ISU officers that they all would be moved from a "4/10" work schedule (four days per week, ten hour days) to a "9/80" work schedule (nine work days, total 80 hours worked). Captain Hernandez indicated that this change was " 'not negotiable' " and if the officers did not like it, they could " 'find new jobs.' "

The terms and conditions of employment with the LAPD were set forth in a memorandum of understanding (MOU) between the City and the Los Angeles Police Protective League (Union). The MOU does not permit a captain to unilaterally change the shift times of the officers under his or her command.

Pursuant to the MOU, a "grievance is defined as a dispute concerning the interpretation or application of [the] MOU or departmental rules and regulations governing personnel practices or working conditions." The first step to grievance resolution is for the grievant to discuss the grievance informally with his or her immediate supervisor. Plaintiff Mike B. reported to his immediate supervisor that Captain Hernandez was trying to unilaterally change the schedule of all ISU members in violation of the MOU. His supervisor told him that nothing could be done, and that going to Captain Hernandez "would only make things worse."

Plaintiff Mike B. then e-mailed a director of the Union regarding the improper unilateral shift change. The Union director reported the information up the chain of command. On June 14, 2011, Captain Hernandez was informed by a lieutenant that he could not make the unilateral shift change.

3

Thereafter, Captain Hernandez called a meeting with 19 members of ISU. Captain Hernandez stated that he was upset "that somebody had contacted the [Union] and 'exercised their rights.' He was heard to say several times, '[S]omeone felt the need to exercise their rights,' and 'now I'm going to follow the rules.' "[2] Captain Hernandez's comments were perceived as threats and a warning of retaliation.

In July 2011, Deputy Chief Mark Perez held a meeting with all members of ISU, including plaintiffs. "The meeting concerned all of the on-going issues within ISU at the time . . . . " After the meeting, Deputy Chief Perez, "being aware of the retaliation and the violation of law, did nothing to stop it."

Thereafter, Captain Hernandez retaliated against all members of ISU, including plaintiffs. For example, Greg G. lost rank from Sergeant II to Sergeant I; Mike B.'s request for an extension of duty in ISU was denied; and when Mike B. was transferred, he was identified on the monthly transfer list as leaving the Special Operations Division, which exposed his identity as a former ISU officer.

2.     *The Instant Action*

On January 26, 2012, plaintiffs filed their complaint in the instant action, alleging a single cause of action for whistleblower retaliation under Labor Code

---

[2]     Captain Hernandez also "said, 'okay, the bars are off,' meaning 'I'm not the [c]aptain right now, tell it to me straight.' " Defendants suggest that " 'okay, the bars are off,' " was a conciliatory statement which implied that Captain Hernandez wanted to work out the dispute with the ISU officers openly and honestly. Plaintiffs, however, perceived the statement as threatening. We cannot say, as a matter of law, that, in context, the statement could not reasonably have been perceived as threatening.

section 1102.5, subdivision (b).[3]  Specifically, plaintiffs alleged that Captain Hernandez retaliated against them for reporting his planned violation of the MOU to the Union and Deputy Chief Perez.  Plaintiffs' complaint suggested the conduct they had reported constituted a planned violation of the National Labor Relations Act (29 U.S.C. §§ 151-169) and/or the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) (MMBA), which provides for collective bargaining and the creation of MOUs.

Defendants demurred.  The demurrer was sustained.  Plaintiffs were granted leave to amend to identify the specific statutes Captain Hernandez's reported conduct had allegedly violated.

The operative pleading is plaintiffs' first amended complaint, which eliminates all reference to the National Labor Relations Act.  Instead, plaintiffs allege that they reported violations of seven specific provisions of the MMBA, and a violation of one provision of the Public Safety Officers Procedural Bill of Rights Act.

Defendants again demurred, arguing that plaintiffs had failed to identify any statute allegedly violated by the conduct they had reported.  Defendants argued that while plaintiffs had reported a planned violation of the MOU, such a violation constituted a mere personnel matter, not a violation of state or federal law on which a whistleblowing cause of action could be based.

---

[3]  At the time of the complaint, that subdivision provided:  "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  (Lab. Code, fmr. § 1102.5, subd. (b).)  The statute has since been amended.  For the purposes of this opinion, all references to Labor Code section 1102.5 refer to the former statute.

5

After a hearing,[4] the trial court sustained the demurrer without leave to amend, on the basis that plaintiffs "failed to plead a violation of any state or federal statute, law, rule or regulation which would make Labor Code [§] 1102.5 applicable. [¶] Plaintiff[s] never participated in a protected act and therefore, cannot substantiate a claim for violation of Labor Code [§] 1102.5."

Judgment was entered accordingly. Plaintiffs filed a timely notice of appeal.

### ISSUE ON APPEAL

On appeal, plaintiffs decline to argue that their reports of Captain Hernandez's planned violation of the MOU constituted protected acts sufficient to trigger the application of Labor Code section 1102.5, subdivision (b). Instead, they argue that their protected act consisted of their purported report to Deputy Chief Perez that Captain Hernandez had *threatened* to retaliate against them for exercising their union rights, itself a violation of the MMBA. However, plaintiffs' complaint fails to allege they made such a report. At oral argument on appeal, plaintiffs represented that they could, in fact, allege in good faith that they specifically reported to Deputy Chief Perez that Captain Hernandez had threatened to retaliate against them for exercising their union rights. Defendants correctly conceded that, if the plaintiffs could amend their complaint in that manner, it would be sufficient to state a cause of action. As plaintiffs

---

[4]     There was no reporter at the hearing and no reporter's transcript has been prepared. The plaintiffs made no effort to obtain a settled statement in lieu of reporter's transcript on appeal. (Cal. Rules of Court, rule 8.137.) In the absence of a reporter's transcript of the hearing on demurrer, we make all reasonable inferences in favor of the trial court's ruling. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794.)

have, to this point, only been given one opportunity to amend their complaint, and have indicated an ability to amend to state a cause of action, we conclude that leave to amend should be granted. We therefore reverse.

## *DISCUSSION*

1. *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621.)

2.      *Whistleblower Retaliation*

Labor Code "section 1102.5(b) protects an employee from retaliation by his employer for making a good faith disclosure of a violation of federal or state law. [Citations.]  A report made by an employee of a government agency to his employer is a disclosure of information to a government or law enforcement agency pursuant to . . . section 1102.5(b).  [Citations.]  'This provision reflects the broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation.'  [Citation.]"  (*Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1548.)

" 'To establish a prima facie case for whistleblower liability, a plaintiff must show that he or she was subjected to adverse employment action after engaging in protected activity and that there was a causal connection between the two.  [Citation.]' [Citation.]  Protected activity is a disclosure of or opposition to 'a violation of *state* or federal *statute*, or a violation or noncompliance with a *state* or federal rule or *regulation*.'  [Citation.]  In other words, '[s]ection 1102.5 of the Labor Code requires that to come within its provisions, the activity disclosed by an employee must violate a federal or state law, rule or regulation.  [Citation.]' [Citation.]"  (*Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1199.)  To constitute a protected disclosure, the employee must have had reasonable cause to believe that the information reported disclosed such a violation.  (*Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 821-822.)

8

In this case, there is no dispute as to whether plaintiffs alleged an adverse employment action and a causal connection. The sole issue of dispute is whether plaintiffs alleged any report that constituted protected activity.

3.     *Protected Activity*

Before the trial court, much of the dispute surrounded reports of a possible MOU violation, and whether such a report constituted protected activity. The trial court concluded that it did not, and plaintiffs do not, on appeal, argue otherwise.[5] Instead, plaintiffs argue that Captain Hernandez "explicitly threatened retaliation" for going to the Union, and such a threat is itself a violation of the MMBA. (Gov. Code, § 3506.5, subd. (a).)[6] Plaintiffs then argue that reporting that threat to Deputy Chief Perez constituted protected activity under Labor Code section 1102.5, subdivision (b).

However, plaintiffs did not allege any such report to Deputy Chief Perez in their operative pleading. We return to the language of the first amended complaint. It alleges that, after Mike B. complained to the Union, Captain Hernandez met with 19 ISU members and made comments which were "perceived as threats and a warning

---

[5]     They are wise to not pursue this argument. While the MMBA authorizes the creation of MOUs, MOUs are enforceable contracts (*City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1092-1093); they do not rise to the level of statutes. Thus, a violation of an MOU is not a statutory violation, and reporting such a violation is not a protected act. Moreover, internal reports regarding personnel matters are not considered to be protected acts. (*Mueller v. County of Los Angeles, supra,* 176 Cal.App.4th at p. 822; *Patten v. Grant Joint Union High School District* (2005) 134 Cal.App.4th 1378, 1384-1385.)

[6]     Pursuant to Government Code section 3506.5, subdivision (a), a public agency shall not "[i]mpose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights [under the MMBA]."

of the retaliation to come." It then alleges as follows: "In or around July 2011, Deputy Chief Mark Perez held a meeting at Commerce Casino with all members of ISU, including Plaintiffs Greg G., Mike B., Juan M., and Jesse S. The meeting concerned all of the on-going issues within ISU at the time, including those listed above. After the meeting, Deputy Chief Perez, being aware of the retaliation and the violation of law, did nothing to change it or stop it. Thus, he ratified and condoned it." Plaintiffs merely allege that they were present at a meeting with Deputy Chief Perez which "concerned all of the on-going issues within ISU at the time, including those listed above." At no time do plaintiffs allege that *anyone* at the meeting, much less plaintiffs themselves, *reported to Deputy Chief Perez* that Captain Hernandez threatened retaliation for the Union complaint.

At oral argument on appeal, plaintiffs indicated that, if granted leave, they could amend their complaint in good faith to specifically allege that plaintiffs reported to Deputy Chief Perez that Captain Hernandez had threatened to retaliate against them for going to the Union. If so amended, their complaint would allege that they reported a violation of Government Code section 3506.5, subdivision (a), and, in turn, it would state a cause of action under Labor Code section 1102.5, for the alleged retaliatory acts taken as a result of that report. Defendants did not disagree with this analysis.

Although plaintiffs made this argument for the first time on appeal,[7] it is not too late to do so at this time. Until now, plaintiffs have received only a single opportunity to amend their complaint, and, at that time, their attention was drawn to their failure to allege *a statute*, the violation of which they reported. It was not until this appeal that plaintiffs' attention was drawn to the fact that their complaint did not explicitly allege that *they reported* a violation of law to Deputy Chief Perez. As such, we conclude plaintiffs should be given an opportunity to amend their complaint to do so.

---

[7]     Plaintiffs' opposition to the demurrer included boilerplate language requesting leave to amend, but did not indicate the manner in which plaintiffs could amend to cure the defects in their pleading.

11

## *DISPOSITION*

The judgment is reversed.  The trial court is directed to vacate its order sustaining the demurrer without leave to amend, and to enter a new and different order sustaining the demurrer with leave to amend.  Each side is to bear its own costs on appeal.


## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*



KUSSMAN, J.*

WE CONCUR:



KITCHING, Acting P. J.



ALDRICH, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.