Filed 11/15/13  Robinson v. San Francisco Community College Dist. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **MARK ROBINSON, III,**<br><br>       **Plaintiff and Appellant,**<br><br>**v.**<br><br>**SAN FRANCISCO COMMUNITY COLLEGE DISTRICT,**<br><br>       **Defendant and Respondent.** | **A136526**<br><br>(San Francisco County<br>Super. Ct. No. CGC-10-499435) |

Mark Robinson, III, a faculty member and former administrator at City College of San Francisco (the College), appeals from a grant of summary judgment to respondent San Francisco Community College District (the District).  Robinson sued the District and a number of individual defendants.[1]  His complaint included a number of counts, but the only one before us is his cause of action for unlawful retaliation under Labor Code section 1102.5.  Robinson alleged that after he filed a claim against the District, the College's chancellor retaliated against him by recommending to the College's board of trustees that Robinson be terminated.  Robinson further alleged the District retaliated in other ways, such as by underpaying him for accrued vacation leave and preventing his selection for a position as dean.

---

[1] We will refer to the defendants below collectively as "the District" save when context requires they be identified individually.

1

The District moved for summary judgment, arguing Robinson had suffered no adverse employment action and contending he could show no causal link between the filing of his claim against the District and the alleged retaliatory acts. The trial court agreed with the District and granted the motion for summary judgment.

Robinson contends the trial court erred in concluding he had failed to present any evidence creating a triable issue of fact on his retaliation claim. He argues he did indeed suffer adverse employment actions and the District's asserted reasons for those actions were merely pretextual. We conclude Robinson has failed to demonstrate the trial court erred, and we will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Robinson is a member of the College's tenured faculty. From spring 2007 until August 13, 2009, he was also the College's vice-chancellor of student development.

*The Internal Auditor's Investigation*

In spring 2009, the District's College Advisory Council raised concerns over Robinson's use of the council's logo, and the College's Chancellor, Donald Griffin, asked the District's internal auditor to investigate the matter. In November 2009, the Office of the Internal Auditor issued its analysis of allegations that Robinson had been using District staff and resources to conduct business for his nonprofit organization, On-Focus, as well as complaints of Robinson's violent behavior towards members of his

---

[2] Our review of the record has been hampered by the failure of Robinson's counsel to comply with the California Rules of Court governing the form of the appendix. (Cal. Rules of Court, rules 8.124(d)(1); 8.144(a)-(c).) In addition, Robinson's opening brief contains very few citations to the record. Many of the citations he does provide are inadequate, either because they do not include both the volume and page number of the record or because they refer us only to Robinson's separate statement of disputed facts. (Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *Spangle v. Farmers Ins. Exchange* (2008) 166 Cal.App.4th 560, 564, fn. 3 [statement in brief that facts may be found in party's separate statement does not satisfy requirement of Cal. Rules of Court, rule 8.204(a)(1)(C)].) "The claimed existence of facts that are not supported by citations to pages in the appellate record, or not appropriately supported by citations, cannot be considered by this court." (*Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 816, fn. 5 (*Mueller*).)

staff. One of the complainants was Laurie Scolari, an associate dean at the College. The internal auditor recommended that Griffin and the internal auditor "reinvestigate Dr. Robinson's business practices" and noted that "potential disciplinary actions . . . may have to be taken against Dr. Robinson." It advised the complaining members of Robinson's staff to speak with the College's EEOC officer and to file formal grievances against Robinson. The internal auditor wrote that he had "requested the complainants to seek police protection while traveling from their offices to their vehicles." He also recommended that "[a]n official, external, and independent investigation should be conducted against Dr. Robinson."

*The Scolari and Alfaro Complaints*

In November 2009, Scolari filed an internal complaint with the College's Office of Affirmative Action (OAA) alleging that Robinson had engaged in sexual harassment and sexual orientation discrimination. On December 7, 2009, Griffin informed Robinson that College employees had alleged discrimination by Robinson on the basis of gender, sexual orientation, and ethnicity, as well as "elements of previous retaliation." Griffin placed Robinson on administrative leave with pay.

That same day, Associate Dean Linda Jackson notified Robinson by letter that the OAA was looking into allegations of discrimination by Scolari and another employee, Ted Alfaro. Jackson enclosed a copy of the District's policy and procedures for handling discrimination complaints. At some point thereafter, Robinson retained counsel, who wrote to Griffin complaining that Jackson had not provided enough details about the underlying allegations against Robinson and requesting a meeting with Griffin and the College's legal counsel. The College's general counsel responded that the College was following the procedures outlined in California Code of Regulations, title 5, section 59300 et seq. and told counsel Jackson would contact Robinson herself.

*The Battalones Investigation*

In January 2010, the OAA began another investigation into allegations made by one of Robinson's subordinates, Jeanne Batallones, that Robinson had retaliated against her. The complaint was brought by the American Federation of Teachers, Local 2121

3

and alleged a violation of the union's collective bargaining agreement with the District. The union claimed that in deciding not to award Battalones a position for which she had applied, Robinson violated the candidate evaluation process required by article 12 of the collective bargaining agreement. It also claimed Robinson had engaged in inappropriate conduct by asking Battalones if she was gay, suggesting her sexuality might be an issue in the position she was seeking, and providing her with interview questions before her interview. The District hired an outside attorney named Amy Oppenheimer to conduct the investigation into the Battalones matter.[3]

### The Reports on the Scolari and Alfaro Matters and Oppenheimer's Follow-up Investigation

On March 1, 2010, Jackson notified Scolari and Alfaro that the OAA had completed its investigation of their complaints and had concluded "there is insufficient evidence to support a finding of probable cause to believe that unlawful discrimination, harassment, or retaliation occurred." Although the investigations concluded there was insufficient evidence that unlawful discrimination or retaliation had occurred, the summaries of the investigations documented numerous instances of Robinson's inappropriate behavior. For example, the Alfaro investigation found that Robinson had subjected Alfaro to "harsh treatment." Robinson had made "gender based negative comments," but his use of such comments "was not sufficiently frequent to constitute creation of an abusive environment . . . ." The evidence also indicated that many administrators thought "everyone would potentially be targeted [by Robinson] sooner or later."

The report on the Scolari investigation noted that Robinson "asked some females

---

[3] In February 2010, Robinson applied for a job as president of a community college in Arizona. He was not selected for the position, and the first through fourth counts of his third amended complaint were based in whole or in part on allegations that the District, Griffin, Scolari, and Scolari's husband had made unlawful disclosures during the selection process for the Arizona position. Robinson's arguments on appeal do not concern these matters, and we therefore will not discuss them in any detail.

4

in his division if they were gay and may have made occasional slurs (use of the term 'fag') concerning sexual orientation in one-on-one conversations." Although the OAA found this behavior had occurred, it nevertheless concluded the behavior was not "sufficient in frequency or duration as to create an abusive working environment." The investigation also found evidence indicating Robinson had referred to some women as "'bitches'" and that Robinson had threatened Scolari at a meeting for "having talked negatively about [Robinson] to a board member[.]" Although Scolari felt physically threatened, "other[ ] administrators at the meeting interpreted the threat by [Robinson] that he would 'get' anyone who spoke negatively about him to board members as a threat to their jobs[.]" According to the report, Robinson "had in fact singled out many of his administrators, so much so that the feeling was that everyone would get their 'turn' to be criticized and ridiculed at some point by [Robinson]."

Although the OAA did not find sufficient evidence to support the claims of discrimination against Robinson, Griffin believed it had "uncovered evidence of [Robinson's] additional acts of dishonesty, unfitness for service, and persistent violation of District rules." On March 5, 2010, the District retained Oppenheimer, who had conducted the Battalones investigation, to conduct a follow-up investigation into allegations of misconduct by Robinson.

<em>Robinson's Claim Against the District</em>

On March 4, 2010, Robinson's counsel requested a tort claim form from the College. On March 11, 2010, Robinson filed a claim against the District under Education Code section 72502 and Government Code section 910. The claim named Griffin and Scolari as the individuals who had caused his injuries. Robinson accused the District of "launching a number of very public, yet ultimately baseless investigations against him." He also alleged that the District had taken "concerted action to foment, pursue and broaden these baseless investigations . . . without providing [him] adequate notice of the alleged conduct[.]" Robinson also claimed that the District had breached the

5

confidentiality of the investigations and had delayed their resolution for the purpose of adversely affecting his career.[4]

The District denied Robinson's claim on April 27, 2010. On May 4, 2010, Robinson filed an action against the District, Scolari, and Griffin.

*Oppenheimer's Report and the Notice of Intended Disciplinary Action*

Oppenheimer conducted the follow-up investigation from March through May 2010, and she presented her report to the District on May 18. She interviewed over 30 witnesses, including Robinson, who was represented by counsel. Oppenheimer concluded Robinson had engaged in various acts of unprofessional conduct and had been dishonest during earlier investigations conducted in 2009 and 2010.

On the basis of Oppenheimer's report, on June 10, 2010, Griffin issued a Notice of Intended Disciplinary Action (the Notice), recommending to the board of trustees that Robinson be dismissed from both his position as vice-chancellor and his tenured faculty position. The Notice charged Robinson with dishonesty, evident unfitness for service, and persistent violations of, or refusal to obey, the College's regulations.

The Notice acknowledged Oppenheimer's investigation of the Battalones matter had ultimately concluded Robinson had not committed an actionable violation of article 12 of the collective bargaining agreement. Nevertheless, the Notice cited Oppenheimer's finding that Robinson had "engaged in multiple inappropriate and questionable acts" during the hiring process. Robinson had claimed unawareness of article 12, failed to comply with the contractual mandate that article 12 be applied, and did not even consider the article 12 evaluation process. He had also met with Battalones in advance of the final interview to help her "prepare" by reading her what she understood to be the interview questions prior to the interview, and prior to her final

---

[4] The bulk of Robinson's claim focused on his unsuccessful application for the position of president of the community college in Arizona and on allegedly defamatory communications between Scolari and individuals involved in the recruiting process for that position. Robinson does not discuss these issues on appeal.

interview, he had asked her whether she was gay and said something about other employees being gay.

The Notice also recognized that Jackson's investigations of three complaints made against Robinson had concluded that no actionable discrimination or retaliation had occurred. Like the first Oppenheimer investigation, however, Jackson's investigation had "uncovered evidence of additional acts of dishonesty, unfitness for service, and persistent violation of District rules" by Robinson. The Notice cited numerous instances of Robinson's inappropriate behavior, and it charged he had provided dishonest answers to the investigator.[5] Robinson denied events confirmed by a half dozen witnesses and provided answers inconsistent with documentary evidence, only to change those answers when confronted with proof of their falsity. Moreover, Robinson "concocted clearly false explanations to challenge the truthfulness of evidence contradicting his testimony."

*The Skelly Review*

Robinson's counsel responded to the Notice on June 21, 2010, accusing Griffin of retaliating against Robinson for filing his lawsuit on May 4. He also demanded that the District afford Robinson a hearing. The District then designated former Chancellor Del Anderson to conduct a hearing before imposition of any discipline on Robinson.[6] The

---

[5] Among the behavior documented in Oppenheimer's follow-up investigation was Robinson's consistent use of profanity in violation of workplace rules of conduct; he referred to female employees as "bitches" and used other unprintable expletives in meetings with employees. He demonstrated bias based on sexual orientation, calling employees "gay," referring to a gay male administrator as "Ms.," and telling the investigator it was "'unclear what gender [the administrator] is.'" Robinson threatened and intimidated employees, ordering them not to communicate with top-level administrators or trustees even when approached. On one occasion, he threatened to strangle a subordinate to death for disagreeing with him. He also used his influence to compel District employees to perform work on behalf of nonprofits he was running, using District employees and resources for those nonprofits. Robinson also singled out young, attractive female subordinates for special treatment and would begin working with them after ascertaining they were heterosexual.

[6] The District acknowledged that *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*) required that Robinson receive certain minimal safeguards before he could be terminated. (See *id.* at p. 215 [due process requires that public employees subject to

7

District and Robinson's counsel both made written submissions. Robinson was offered the opportunity to respond orally, but he declined.

On June 30, 2010, counsel for the District submitted a letter to Anderson that addressed certain procedural issues raised by Robinson's counsel. The District's counsel explained that under the Education Code, Robinson had no property interest in his *administrative position* as vice-chancellor, because he served at the pleasure of the District's governing board. On the other hand, since Robinson was also a tenured faculty member, he was entitled to procedural protections under various provisions of the Education Code. Counsel explained the required procedures and noted the District was also providing the predismissal safeguards mandated by *Skelly*. He also stated that "the District is committed to providing such further appellate process as the law may require in the event of a final decision by the Board of Trustees to terminate Dr. Robinson."

In a July 15, 2010 letter addressed to Griffin and sent to Robinson's counsel, Anderson provided her review and recommendations on the proposed discipline. Anderson noted her review was based solely on the Notice, letters from Robinson's counsel dated June 21 and July 8, and Sloan's June 30 letter. According to Anderson, Robinson "was presented an opportunity to meet and present his side of the case to The Reviewer in-person. [Robinson] did not respond to The District's deadline nor request an extension; and was presumed by The Reviewer to have declined the in-person meeting."[7]

Anderson's *Skelly* review concluded there were reasonable grounds to believe Robinson had been dishonest with investigators, but there did not appear to be reasonable grounds to believe he was unfit for service. She also concluded Robinson had violated District policies, but opined that the misconduct did not "constitute[] a 'persistent' violation." She concluded there were reasonable grounds to uphold the District's

termination receive "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline"].)

[7] Because the record demonstrates that in addition to his written submissions, Robinson was offered the opportunity to present his case orally to the *Skelly* reviewer, we disagree with his counsel's suggestion at oral argument that no *Skelly* hearing occurred.

recommendation to terminate Robinson from his administrative position, but found there was insufficient justification for terminating Robinson from his faculty position. Anderson therefore recommended the Notice be modified such that the proposed dismissal would apply only to Robinson's administrative position.

*Robinson's Resignation as Vice-Chancellor and Return to Faculty*

On August 12, 2010, less than one month after Anderson's *Skelly* review was completed, Robinson resigned from his position as vice-chancellor. He did not resign from the faculty, however, and stated he wished to return to his tenured position "at a mutually acceptable time." Clara Starr, the College's director of human resources, accepted Robinson's resignation, noting he had not exercised his right to challenge administratively the recommendation that he be removed from his post as vice-chancellor. She granted Robinson's request to use a portion of his accrued leave time to take off the fall semester. Starr told Robinson he would receive a lump-sum payout of the remaining leave time if he were to resign from the District at the end of the fall semester.[8]

*The Action Below*

As we noted earlier, Robinson filed his initial complaint on May 4, 2010. He filed his operative third amended complaint on July 21, 2011. It named the District, Griffin, Scolari, and Scolari's husband as defendants and contained six causes of action, the fifth of which alleged the District had unlawfully retaliated against Robinson in violation of Labor Code section 1102.5. The fifth cause of action alleged Robinson had engaged in protected activity by submitting his Government Code claim to the District. As relevant here, Robinson alleged the District retaliated against him by: (1) constructively terminating him from his administrative position, (2) denying him any opportunity to challenge administratively any adverse employment action concerning his administrative position, (3) withholding wages in the form of vacation time he had accrued as an administrator, (4) illegally threatening to garnish his wages to recoup alleged

---

[8] Robinson did not resign and was still a member of the College's faculty at the time of his deposition in December 2011.

9

overpayments, (5) imposing unfavorable assignments on him without regard to his seniority, and (6) suspending the selection process for a dean position for which he had applied.

Robinson later voluntarily dismissed the case against Griffin with prejudice, and on February 24, 2012, the remaining defendants moved for summary judgment. Regarding the fifth cause of action for retaliation, the District argued Robinson could not demonstrate either that he had suffered an adverse employment action or any causal link between the Notice and his alleged protected activity.

After a hearing, the trial court granted summary judgment to the District on the fifth cause of action. The court ruled that "the only potentially cognizable adverse employment actions were the Notice . . . and alleged constructive termination. The other cited incidents of retaliation are not actionable, not supported by evidence, and/or untimely. The earliest protected activity cited in the complaint was the filing of the government claim. Mr. Griffin explains that he issued the Notice . . . in response to the second Oppenheimer investigation. [Robinson] has not presented sufficient responsive evidence showing that Mr. Griffin's reasons were pretextual or that there is a nexus between the protected activity and the asserted adverse employment action."

The District filed a memorandum of costs, and Robinson moved to strike or tax some of those costs. The trial court denied Robinson's motion and awarded costs to the District.

The court entered judgment for the District, and Robinson filed a timely notice of appeal.

DISCUSSION

On appeal Robinson challenges only the trial court's grant of summary judgment on his claim for retaliation. He makes several claims of error. First, he contends the trial court incorrectly rejected his claim of constructive discharge. Second, he argues the court erred in finding the other alleged retaliatory acts were either not actionable, unsupported by evidence, or untimely. Finally, he asserts the trial court committed error in failing to aggregate all of the instances of allegedly retaliatory conduct in determining

10

whether there had been an adverse employment action.  We will address these arguments after setting out the applicable law and our standard of review.

I.	*Governing Law and Standard of Review*

Labor Code section 1102.5, subdivision (b) prohibits an employer from retaliating "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  "This provision reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.)  A report by an employee of a government agency to his or her employer constitutes a protected disclosure under this section.  (Lab. Code, § 1102.5, subd. (e).)

"The elements of a section 1102.5(b) retaliation cause of action require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation." (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384 (*Patten*).)  These elements are the same as those for a cause of action for retaliation under the California Fair Employment and Housing Act (FEHA), Government Code section 12940, subdivision (h).  (*Patten, supra,* 134 Cal.App.4th at pp. 1381, 1386, citing *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (*Yanowitz*); see *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453 (*Akers*).)

A plaintiff establishes a prima facie case of retaliation by showing: (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between plaintiff's engagement in protected activity and the adverse employment action.  (*Patten, supra,* 134 Cal.App.4th at p. 1384.)  In this case, the parties appear to agree Robinson engaged in protected activity within the meaning of Labor Code section 1102.5 by filing his claim under Government Code section 910 on March 11, 2010.  Thus, there is no dispute that Robinson satisfied the first element of his

11

prima facie case. The parties' arguments focus instead on whether Robinson suffered any adverse employment action and whether he demonstrated a causal link between the alleged adverse action and his engagement in protected activity.

"A motion for summary judgment shall be granted if all the evidentiary papers submitted, which we review independently, show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Patten, supra,* 134 Cal.App.4th at p. 1383.) A defendant seeking summary judgment bears the initial burden of proving plaintiff's cause of action has no merit, either by showing that one or more elements of the cause of action cannot be established, or by showing there is a complete defense. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67 (*Morgan*), citing Code Civ. Proc., § 437c, subds. (a), (o)(2).) "Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action." (*Morgan, supra,* 88 Cal.App.4th at p. 67.)

In an action claiming retaliation under either the FEHA or Labor Code section 1102.5, if an employee establishes a prima facie case of retaliation, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. (*Akers, supra,* 95 Cal.App.4th at p. 1453.) A plaintiff can make out a prima facie case "by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388 (*McRae*).) This evidence satisfies only the plaintiff's initial burden, however. (*Ibid.*) If the employer then produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation. (*Akers, supra,* 95 Cal.App.4th at p. 1453.)

The employee may show the employer's claimed nonretaliatory reason is pretextual ""'either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence."' [Citation.]" (*Morgan, supra,* 88 Cal.App.4th at p. 68.)  While a retaliation case may be built on either direct or circumstantial evidence, circumstantial evidence of pretext must be specific and substantial to create a triable issue of fact on whether the employer intended to retaliate on an improper basis.  (*Id.* at pp. 67, 69.)  Once the employer has offered a legitimate, nonretaliatory reason for the adverse employment action, the temporal proximity between the employee's protected activity and the adverse employment action is not alone sufficient to raise a triable issue of fact as to pretext.  (See *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353.)  This is especially true where the employer raised questions about the employee's performance *before* he engaged in protected activity.  (See *ibid.* [in disability discrimination case, temporal proximity alone does not create triable issue as to pretext where employer had criticized employee's performance before employee disclosed symptoms of disability].)

II.     *Robinson's Constructive Discharge Claim Fails.*

Robinson contends the trial court erred in rejecting his alleged constructive discharge as a basis for denying summary adjudication on his retaliation claim.  The District's motion for summary adjudication argued Robinson could not show he had been subjected to an adverse employment action because he had voluntarily resigned from his position as vice-chancellor while on administrative leave.[9]  As he did below, Robinson contends he resigned after receipt of the June 30, 2010 letter from the District's counsel, because any reasonable employee in his position would have realized the District intended to terminate him from his administrative position.  Robinson maintains he resigned to "avoid the significant and lasting stigma of being terminated," rather than waiting to a termination he deemed "inevitable."  According to Robinson, he believed his termination was inevitable because the June 30, 2010 letter falsely claimed he would

---

[9] In deposition, Robinson was asked why he had resigned from his administrative position, but his attorney instructed him not to answer on grounds of attorney-client privilege.  Robinson's counsel represented that his client had no independent knowledge of why he had resigned from his administrative position.

13

have no right to a hearing or appeal from dismissal from his administrative position. This claim does not withstand scrutiny.[10]

### A. *Elements of a Constructive Discharge Claim*

"In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 (*Turner*).) Ordinarily, whether working conditions were so intolerable as to meet the *Turner* standard is a question of fact. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1022 (*Scotch*).) Summary judgment or adjudication is nevertheless appropriate "when, under the undisputed facts, the decision to resign was unreasonable as a matter of law." (*Ibid.*)

### B. *Robinson Failed to Show the Existence of a Triable Issue of Fact on His Constructive Discharge Claim.*

In response to the District's assertion that Robinson had resigned from his position as vice-chancellor, Robinson claimed he was "compelled to resign his administrative position" because the June 30, 2010 letter from District counsel Jeff Sloan incorrectly represented Robinson was not entitled to a hearing or appeal of his dismissal from that

---

[10] Robinson also contends the trial court's order does not adequately explain its reasons for granting summary judgment. His opening brief does not support this argument with any authority, and it is therefore forfeited. (*Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826-827, fn. 1.) In any event, the order is adequate for purposes of our review, because "there is no question about the reason this motion for summary judgment was granted." (*W.F. Hayward Co. v. Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101, 1111.) Even if the trial court had failed to specify the reasons for its determination (Code Civ. Proc., § 437c, subd. (g)), that would not automatically require reversal, because "[t]he de novo standard of appellate review . . . frequently means the lack of a proper order constitutes harmless error." (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1057.)

position. Robinson's claim does not withstand scrutiny, and we conclude he failed to demonstrate the existence of a triable issue of fact on his constructive discharge claim.

First, Robinson's argument rests on an unspoken—and unproven—factual premise. It assumes his termination was a foregone conclusion and seeks to use Sloan's letter as proof of that premise. But both the Notice and Sloan's letter state that the final decision to terminate Robinson would be up to the College's board of trustees, not to Griffin or Sloan. (See Ed. Code, § 87669 ["The *governing board* shall determine whether a contract or regular employee is to be dismissed"], italics added.) The Notice explained that Robinson had the right to respond to the charges orally or in writing and that "any response he may submit will be presented to the Board of Trustees *before it makes a final decision concerning the intended disciplinary action*." (Italics added.) Similarly, Sloan's June 30, 2010 letter stated, "the District is committed to providing such further appellate process as the law may require in the event of a final decision *by the Board of Trustees* to terminate Dr. Robinson." (Italics added.) Thus, both Griffin and Sloan stated that before Robinson could be disciplined or terminated, he would be entitled to be heard by the actual decision making body—the College's board of trustees. At most, Sloan's letter sets forth the *District's* position on certain issues in the case, but it can shed no light on the intentions of the *board of trustees,* the only entity with the power to terminate Robinson. Robinson offered no proof on whether that body intended to terminate him without a hearing.

Second, Robinson's argument ignores the context in which Sloan's letter was sent. While Robinson claims the letter is an assertion by the District that he could be dismissed from his administrative position without a hearing or right to appeal, Sloan wrote the letter to Del Anderson as part of her *Skelly* review. The correspondence demonstrates that all participants in that process understood the *Skelly* review extended to Robinson's proposed dismissal from both of his positions: Sloan's letter discusses the evidence supporting Robinson's dismissal "from *both* his educational administrator *and* tenured faculty positions[.]" (Italics added.) Moreover, Sloan's discussion of both positions is inconsistent with the claim that the District believed Robinson was not entitled to any

15

hearing with regard to his position as vice-chancellor. Similarly, in his July 8, 2010 response to Sloan's letter, Robinson's counsel addressed the charges against Robinson as they related to both his administrative and his faculty positions.[11] Finally, Anderson clearly understood her review included the proposal to dismiss Robinson from both positions he held. She therefore considered the evidence with regard to the administrative and faculty positions and ultimately concluded there were not reasonable grounds to terminate Robinson from the latter.[12] In short, the letter Robinson offers as proof of the District's intent to terminate him *without* a hearing was actually written as part of the predismissal *Skelly* hearing process, and the *Skelly* review encompassed not only his faculty position, but also his administrative position.

Third, focusing on the June 30, 2010 letter itself, Robinson asserts Sloan misrepresented the law regarding Robinson's rights when Sloan stated that under Education Code section 72411, Robinson served in his vice-chancellor capacity "at the pleasure of the board of trustees and, as a consequence, can be dismissed from that position at the District's will. Accordingly, he is not entitled to a hearing or appeal of his dismissal from his administrative position." The letter went on to note, however, that Robinson retained his status as a tenured faculty member, and that "dismissal from his tenured faculty position is subject to the Education Code provisions governing the dismissal and penalties for academic employees for cause. (See Educ. Code § 72411.5.)"

Education Code section 72411.5 provides that "[i]f the administrator has tenure as a faculty member, the dismissal of, and imposition of penalties for cause on *the administrator* shall be in accordance with the provisions applicable to faculty members." (Ed. Code, § 72411.5, italics added.) Thus, the District contends, the June 30, 2010 letter

---

[11] Conspicuously absent from the July 8, 2010 letter was any assertion that Sloan's letter showed the District intended to terminate Robinson from his administrative position without a hearing. In fact, the July 8 letter did not mention that issue at all.

[12] We note once again that Robinson chose not to avail himself of the opportunity for an oral hearing before Anderson. Furthermore, the *Skelly* hearing was the first of *two* predismissal hearings Robinson would have received. The second would have been the hearing before the College's board of trustees.

correctly stated that Robinson's proposed termination from his vice-chancellor post would be subject to the procedures applicable to faculty members.

We disagree with the District on this point, because Sloan's letter misstated the law as it applied to Robinson. While educational administrators generally may be dismissed without a hearing or right of appeal, educational administrators like Robinson, who are also tenured faculty members, receive the procedural protections accorded to tenured faculty. (Ed. Code, § 72411.5.) And although Sloan did cite Education Code section 72411.5, the actual text of his letter does not make clear that the lengthy procedural protections he describes applied to Robinson's proposed termination from both positions, rather than to his faculty position alone.

Nevertheless, Robinson cannot use the misstatement in Sloan's letter to create a triable issue of fact on the issue of constructive discharge. Despite the misstatement in its text, Sloan's letter correctly cited Education Code section 72411.5, which makes clear the procedures governing Robinson's dismissal from his tenured faculty position would also apply to his administrative position. Tellingly, the *Skelly* hearing officer, Del Anderson, considered the issue of Robinson's fitness for both positions. Robinson was represented by counsel, who received a copy of the June 30 letter. By reading the cited statute, Robinson's counsel presumably became aware of the actual procedures applicable to his client's proposed termination.[13] (See *Turner, supra,* 7 Cal.4th at p. 1246 ["an employee cannot simply 'quit and sue,' claiming he . . . was constructively discharged"].)

In any event, this misstatement of the applicable dismissal procedures is not the sort of "'intolerable' or 'aggravated'" working condition that would compel a reasonable employee to resign. (See *Turner, supra,* 7 Cal.4th at p. 1247 ["'[s]ingle, trivial or isolated acts of [misconduct] are insufficient' to support a constructive discharge claim"; demotion accompanied by reduction in pay insufficient]; *Thompson v. Tracor Flight Systems, Inc.* (2001) 86 Cal.App.4th 1156, 1171 [while not encouraged, "employers have the right to unfairly and harshly criticize their employees, to embarrass them in front of

---

[13] Indeed, in his reply brief, Robinson relies on Education Code section 72411.5 as authority for his claim that he was entitled to a hearing.

17

other employees, and to threaten to terminate or demote the employee"].)  Thus, even if Robinson believed Sloan's letter was an expression of the District's intent to terminate him from his administrative position without a hearing, a single letter brief to a hearing officer shows "no continuous pattern of harassment or aggravating conditions[.]" (*Turner, supra,* 7 Cal.4th at p. 1255.)

In addition, "[u]nder *Turner,* the proper focus is on the working conditions themselves, not on the plaintiff's *subjective* reaction to those conditions." (*Gibson v. Aro Corp.* (1995) 32 Cal.App.4th 1628, 1636.)  Robinson's assumption that the District intended to terminate him without further process is not enough to show that "the resignation was coerced[.]" (*Turner, supra,* 7 Cal.4th at p. 1246.)  To the contrary, Robinson admits he resigned—a month after Anderson's ruling, following a hearing addressing both of his positions—to "avoid the significant and lasting stigma of being terminated," a fact which indicates his "resignation was voluntary and strategic, not . . . coerced or compelled by [the District's] acts." (*Id.* at p. 1255 [no constructive discharge where plaintiff admitted to having resigned because he believed his employer was "'setting him up' for termination and that his 'chances would be better' in future litigation if he preempted his discharge"].)  Robinson's claimed constructive discharge is a post hoc rationale unsupported by the evidence.

In light of these facts, we conclude there is no disputed evidence from which a reasonable trier of fact could find the District created circumstances that would have compelled a reasonable employee in Robinson's position to resign.  (See *Scotch, supra,* 173 Cal.App.4th at p. 1022 [summary judgment appropriate where decision to resign is unreasonable as a matter of law].)

III.    *The Remaining Alleged Acts of Retaliation Do Not Create Triable Issues of Fact on Robinson's Retaliation Claim.*

In addition to his alleged constructive discharge, Robinson's opening brief cites three other actions as evidence of actionable retaliation.[14]  As we explain, none of these

---

[14] In this portion of his brief, Robinson repeats his argument concerning Sloan's June 30, 2010 letter, claiming the letter tricked him into resigning.  The discussion in the

actions, either individually or in the aggregate, are sufficient to create a triable issue of fact on his retaliation claim. Robinson has therefore failed to demonstrate the trial court erred in granting summary judgment.

A. *Dispute Over Payment for Accrued Vacation*

Robinson first asserts the District improperly compensated him for vacation time he had accrued in his administrative position at the much lower pay rate for his faculty position. He argues this is evidence of retaliation. The precise facts underlying this argument are not entirely clear, because Robinson has largely failed to provide us with proper citations to the record and has not adequately explained the relevance of the evidence he does cite. It is not our obligation to review the record "to ferret out such asserted evidence." (*Mueller, supra,* 176 Cal.App.4th at p. 816, fn. 5.)

Insofar as we can discern, when Robinson resigned his position as vice-chancellor to return to the faculty, he asked the District to permit him to use earned vacation time "effective August 13, 2010 until the last day of classes of the [fall 2010] semester and to receive a cash payout for all the remaining days of [his] earned vacation." The District approved this request, and Robinson was allowed to take off the fall 2010 semester using a portion of his accrued vacation. He was told the leave period would exhaust 88 of the 135 days of vacation he had accrued, and the remaining 47 days would be paid to him in a lump sum. Robinson claims he was compensated for the accrued vacation time at his lower faculty rate of pay, rather than at the higher rate he would have been owed as an administrator, and this alleged underpayment was in retaliation for the filing of his Government Code claim.

The District argued below that Robinson had produced no admissible evidence that any similarly situated administrator who returned to a faculty position was treated any differently in terms of vacation pay. It also contends Robinson was treated not adversely but preferentially, because the evidence established that "Robinson was allowed [to] take a semester of vacation as a faculty member, even though faculty

_____

preceding section of this opinion suffices to dispose of this argument, and we will not repeat it here.

19

members do not accrue vacation." In response to the District's motion, Robinson claimed he had been "forced" to use his vacation time while being paid at a faculty rate, while other administrators had returned to a faculty position were paid for vacation at the higher rate for administrators.

On appeal, Robinson tells us he cited admissible evidence showing he had been singled out for underpayment. But the portions of the record identified in his brief do not support his argument. For example, he directs us to several pages of Starr's deposition. When asked about the issue of Robinson's vacation pay, however, Starr testified, "I don't have anything to do with the accrued days." She also testified she did not make the decision concerning the rate at which Robinson would be paid.

In addition, these portions of the record do not appear to disclose the actual rate at which Robinson was paid for his accrued vacation. We therefore have no way of assessing the truth of Robinson's assertion that he was underpaid for his vacation time.[15] And while the record does contain a list of five administrators who were compensated for accrued vacation at their administrative pay rate, none of them seem to have used accrued vacation to take an entire semester off from their faculty duties. In fact, the unusual nature of the District's decision to permit Robinson to take the fall 2010 semester off brought a challenge from the union. Responding to that challenge, the College's Employee Relations Office characterized Robinson's situation as "truly unique . . . not only because of the particularities of Dr. Robinson's change in status but also because the decision to grant his request for vacation time was part of an effort by the District to accommodate Dr. Robinson."

This evidence is insufficient to show there are disputed issues of fact either as to whether Robinson suffered an adverse employment action or as to whether there was a

---

[15] In the court below, the District noted—and Robinson's moving papers acknowledged—that Robinson had contested the rate at which he had been compensated for accrued vacation time by filing a grievance, which had not yet been resolved. The District therefore contended there had been no final administrative action on this pay dispute, and thus the terms and conditions of Robinson's employment had not been altered.

20

causal link between the alleged adverse action and his protected activity. Robinson has therefore failed to show the trial court erred in granting summary judgment. (See *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 [it is not the appellate court's duty "to resurrect an appellant's case or comb through the record for evidentiary items to create a disputed issue of material fact"].)

        B.      *Selection for Dean Position and Rejection of Grant Proposal*

As further evidence of retaliation, Robinson mentions the suspension of the selection process for a dean position for which he applied and the District's rejection of a grant proposal he submitted. We decline to consider these claims, because these sections of his brief are almost entirely devoid of proper citations to the record, since they refer us only to his separate statement of disputed material facts.[16] (See *Mueller, supra,* 176 Cal.App.4th at p. 816, fn. 5 [refusing to consider factual assertions where plaintiff cited "to his own separate statement of material facts, and although the separate statement does contain references to evidence, the references are not to the page numbers of the appellate record"]; *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024 ["The separate statement is not itself evidence of anything. It is mere assertion."].) In addition, Robinson's third amended complaint did not plead the rejection of his grant proposal as one of the factual bases for his retaliation claim. Because "the pleadings set the boundaries of the issues to be resolved[,]" the District was not required "to refute liability on some theoretical possibilities not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 499.)

---

[16] Robinson does cite to a few pages of Dean Starr's deposition in which she was asked about his application for a dean position, but Starr testified only that she could not recall who was on the hiring committee for the position and that she was told to put the hiring process on hold because of unspecified concerns about confidentiality. When she expressed uncertainty about what had happened in the hiring process, she was asked whether "there [is] someone else that we should ask to find that out[.]" Starr responded by saying, "I mean, if you want the facts, I'd have to go back and look in my office." It is unclear how this testimony would support Robinson's claim, and he does not explain its relevance. Robinson also does not tell us whether anyone followed up on this line of questioning, either with Starr or with other witnesses.

21

IV.     *Failure to Aggregate Instances of Alleged Retaliatory Conduct*

Robinson also contends the trial court erred in failing to aggregate all of the District's allegedly retaliatory conduct in determining whether he had been subjected to adverse employment actions.  (See *Yanowitz, supra,* 36 Cal.4th at p. 1058 ["a series of separate retaliatory acts collectively may constitute an 'adverse employment action' even if some or all of the component acts might not be individually actionable"].)  He identifies three additional allegedly retaliatory actions he contends the trial court should have considered:  (1) the recommendation that he be terminated from his faculty position as well as his administrative position "even though [the District] does not claim it had any grounds for doing so, and later decided not to accept the recommendation;" (2) "illegally threatening to garnish [his] wages in order to recoup an alleged overpayment of his administrator vacation time;" and (3) ignoring his rights under the applicable memorandum of understanding by assigning him to "unacceptable positions" and only relenting after he filed a union grievance.  We have examined the record and applicable law, and we conclude Robinson has failed to demonstrate the trial court erred.

A.     *Recommended Termination from Faculty Position*

With respect to the recommendation that Robinson be terminated from both his faculty and administrative positions, the District's motion for summary judgment stated that Griffin sent Robinson the Notice because Oppenheimer had concluded "among other things, that [Robinson] had been dishonest during the investigations of his alleged misconduct and he engaged in inappropriate behavior for an administrator."  As supporting evidence, the District cited Griffin's deposition testimony that he had recommended Robinson's termination because Robinson had used profanity when referring to women, denigrated other employees and questioned their sexual orientation, tried "to dominate and break people down using power differentials," denied individuals the ability to function in the workplace, and been dishonest about his conduct.  The District also cited the Notice itself, which reflected these concerns.  It also relied on Robinson's own deposition testimony, in which he stated he understood from the Notice

that his termination was being recommended "on the basis of dishonesty, evidence of unfitness for service, and refusal to obey school laws[.]"

Thus, the District put forward substantial evidence of legitimate, nonretaliatory reasons for recommending Robinson's termination. (*Morgan, supra,* 88 Cal.App.4th at pp. 74-75 [declarations from decision makers who gave specific, job-related reasons for decision not to hire plaintiff sufficed to meet employer's burden on summary judgment]; see *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1527-1528 [deception or refusal to cooperate with internal investigation is legitimate reason for termination].) Once the District did so, Robinson could avoid summary judgment only by offering substantial evidence that the District's stated reasons were either untrue or pretextual, or that the District was actuated by a retaliatory motive. (*Morgan, supra,* 88 Cal.App.4th at p. 75.) Robinson's briefs on appeal point us to no such evidence, however, and as we have explained above, his contention that the District did not claim it had any grounds for recommending his termination from both positions contradicts the record.

B.     *"Illegal" Garnishment of Pay*

Turning to Robinson's claim that the District "illegally" threatened to garnish his wages to recoup an overpayment of vacation time, he directs us to several pages in the record showing that the College's human resources department concluded he had been overpaid in August 2010. Robinson was paid his higher administrative salary in advance for that entire month, although he resigned his post as vice-chancellor and returned to his faculty position effective August 12. The College informed him it would collect the net amount of the repayment by making deductions from his pay over the remainder of 2010. The College's director of payroll services wrote to Robinson on August 27, 2010, to inform him that the College would implement the payroll deduction schedule unless it heard from him by September 7. We have been directed to nothing in the record showing how or whether Robinson responded.

Contrary to the claims in Robinson's opening brief, this payroll matter appears to have had nothing to do with an overpayment of vacation time. Perhaps more important,

23

Robinson does not even dispute that he *was* overpaid for August 2010. He thus does not appear to challenge the correctness of the College's decision. Furthermore, Robinson directs us to no evidence of the required causal link between the overpayment issue and his engagement in protected activity. (*Morgan, supra,* 88 Cal.App.4th at p. 69.) Temporal proximity alone is insufficient to satisfy Robinson's burden of showing a triable issue of fact on whether his employer's articulated reason for its action was untrue and pretextual. (*Arteaga v. Brink's, Inc., supra,* 163 Cal.App.4th at p. 353.) Because Robinson failed to offer substantial evidence that the College's stated reason for recouping the overpayment was merely a pretext and that its decision had a retaliatory motive, he did not create a triable issue of fact on this claim. (See *Scotch, supra,* 173 Cal.App.4th at p. 1021.)

### C. *Dispute Over Assignments*

Robinson has forfeited his contention that the District retaliated "by assigning him to unacceptable positions" because this portion of his brief cites us to no supporting evidence in the record. (See *Mueller, supra,* 176 Cal.App.4th at p. 822 [plaintiff forfeited retaliation claim under Lab. Code, § 1102.5 where factual representations in his briefs were unsupported by citations to the record].) In addition, his brief states the District relented after he filed a grievance, so it appears the assignment issue was ultimately resolved in his favor. Quite apart from his failure to support his claims with citations to the record, Robinson has not demonstrated the disagreement over his assignment was anything other than a "mere inconvenience[] or insignificant change[] in job responsibilities." (*Yanowitz, supra,* 36 Cal.4th at p. 1060; see *Mueller, supra,* 176 Cal.App.4th at p. 822 [transfer of employees is personnel matter and does not rise to level of whistleblower retaliation]; *McRae, supra,* 142 Cal.App.4th at p. 393 [transfer of employee not adverse employment action when it is into a comparable position and does

not result in substantial harm].)  It therefore does not appear the dispute over assignments would rise to the level of an adverse employment action in any event.[17]

DISPOSITION

The judgment is affirmed.  Costs on appeal to respondent.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

 

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.

---

[17] We agree with the District that Robinson has forfeited his argument regarding the denial of his motion to tax costs.  The argument is not made under a separate heading but instead appears in the portion of the opening brief entitled "Conclusion."  (See *Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9 (Cantil-Sakauye, J.) [general argument headings like "Statutory Analysis" and "Case Analysis" do not satisfy requirements of Cal. Rules of Court, rule 8.204(a)(1)(B) for separate headings summarizing argument].)  The opening brief also improperly seeks to incorporate by reference arguments made in Robinson's moving papers below.  (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 690, fn. 18.)  Moreover, since Robinson devotes only one paragraph to the issue, "we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)